```
1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
2                        WESTERN DIVISION

3    UNITED STATES OF AMERICA,          Case No. 3:10CR464
                                        Case No. 3:11CR188
4                                       Cleveland, Ohio
                 Plaintiff,             January 24, 2012
5                                       2:30 p.m.

6          vs.

7    ROY CALHOUN,

8                Defendant.

9                      TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE JAMES R. KNEPP, II
                   UNITED STATES MAGISTRATE JUDGE
10

11   APPEARANCES:

12   For the Government:          James Moroney
                                  Assistant United States Attorney
13                                801 West Superior Avenue
                                  400 U.S. Court House
14                                Cleveland, Ohio   44114-2600
                                  (216) 622-3600
15

     For the Defendant:          George Gerken
16                                412 14th Street
                                  Toledo, Ohio  43624
17                                (419) 243-5552

18

19

20

21   Court Reporter:             Judith A. Gage, RMR-CRR
                                  7-182 U.S. Court House
22                                801 West Superior Avenue
                                  Cleveland, Ohio    44113
23                                (216) 357-7238

24
     Proceedings recorded by mechanical stenography.
25   Transcript produced by computer-aided transcription.
```

1          P R O C E E D I N G S

2

3          THE COURT:   We are on the record in the case of

4    the United States of America versus Roy D. Calhoun, it is

5    Case Numbers 3:10CR464 and 3:11CR188.  Pam, could you run up

6    and get my black notebook, please, off the table?   Thanks.

7    It's on my conference table.

8          Mr. Calhoun was charged in an indictment and a

9    superseding indictment with -- let's see here.  In 10CR464,

10   in Count 1 with conspiring to obstruct a sex trafficking

11   investigation, sex trafficking of a minor.  Counts 2 and 3

12   of violation of Title 18 U.S.C. Sections 1591(a)(1) and

13   (b)(2), sex trafficking of children; in Count 4, violation

14   of Title 18, Section 2422(a), persuading, inducing,

15   enticing, and coercing an individual to travel in interstate

16   commerce to engage in prostitution; Count 5, violation of 18

17   U.S.C. Section 1591(a)(1) and (b)(1), sex trafficking of

18   children; Counts 6 through 9, with violations of Title 18,

19   U.S.C. Section 2421 and 2, transportation in interstate

20   commerce with intent to engage in prostitution, and in Count

21   10 with violation of 18 U.S.C. Section 1594(c), conspiring

22   to obstruct a sex trafficking operation.

23          Then in Case Number 3:11CR188, he was charged in

24   Count 1 with a violation of 21 U.S.C. Section 841(a)(1) and

25   21:846, conspiracy to possess with intent to distribute, and

1    in Count 2 with a violation of Title 18, U.S.C. Section

2    1791(a)(1), providing or possessing contraband in prison.

3            Present in court today are, excuse me, Mr.

4    Calhoun, and his counsel, Mr. Gerken, is here with him.

5    Present on behalf of the Government we have AUSA Moroney

6    here.

7            Are the parties ready to proceed?

8            MR. MORONEY:  Yes, Your Honor.

9            MR. GERKIN:  Yes, we are.

10           THE COURT:   Yes.  Mr. Calhoun, taking a guilty

11   plea involves several steps we have to go through, so it

12   takes a little bit of time, but it is critically important

13   that you understand everything that we're doing, and I mean

14   every word of everything that we're doing, so I'll take as

15   much time as we need to take today because this is -- you

16   know, some of this is your Constitutional rights, some of

17   this is spelled out in the criminal rules that I have to go

18   through certain things with you, but just to kind of give

19   you an idea of the big picture, how it is going to work, the

20   first thing we have to do is talk about you appearing before

21   me today as opposed to a District Judge, and I'll talk to

22   you about the difference between what I am and a District

23   Judge.  We'll talk about that.

24           I have to make sure that you are competent to

25   plead, that you understand who you are and where you are,

1    and there is not some, you know, impairment that is causing

2    you difficulty there.

3           I have to make sure you understand those rights

4    that we're talking about, and a lot of those are, you know,

5    specific rights that you have to trial.  You might be

6    saying, "Well, why is he talking to me about what a jury

7    would be like and all that stuff"; well, it is spelled out

8    in Criminal Rule 11, but I have to go through it and have a

9    dialogue with you, do you understand you have this right, do

10   you understand you will be waiving this right, and so we'll

11   do that and it may seem like we're going over and over, but

12   I have to go through each one of those things with you and

13   talk to you about those.

14          I have to make sure that you understand the nature

15   of the charges against you, and as part of understanding the

16   charges I have to make sure you understand what the

17   potential penalties are that are associated with each of

18   those charges and that's -- we'll go through those one by

19   one and talk about the charges and the potential penalties,

20   and finally I have to make sure that your plea is voluntary,

21   that you are not subject to some, you know, either threats

22   or promises and that you are doing this with your eyes wide

23   open, understanding what you are doing, and that is kind of

24   where we're going from the start to the end, and at the end,

25   you know, if I'm satisfied of all those things and you

1     understand everything that has taken place, then we can take

2     your plea, but that's -- we're going to just chip away at

3     it.

4          My mom used to say, "You eat an elephant one bite

5     at a time," and that's kind of what we're going to do, is go

6     through this one, you know, one layer at a time and talk

7     about the different things.

8          So, the one -- I want to just tell you before we

9     start and I'll probably remind you of this again as we're

10    going along, you're going to waive a lot of rights today.

11    I'm going to say, you know, you have this right, you are

12    going to be waiving this right, we'll do that over and over

13    again, but one right that you're not going to be asked to

14    waive today is your right to counsel.  Your right to counsel

15    was with you yesterday, it is with you today and it will be

16    with you tomorrow, and that means if you need to stop and

17    speak with Mr. Gerken at any point during this proceeding,

18    you just let me know and we'll stop and you can clear up

19    whatever you need to clear up with him.

20          Your right to counsel is not something that you

21    are going to be waiving today.  It is going to be with you

22    throughout this hearing; it will be with you all the way to

23    the end of the case.  Do you understand that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Okay.  I'm going to ask you to do your

1    best to speak up and maybe even move the microphone -- well,

2    can you hear him okay, Tina?   Are you able to pick him up

3    today?

4            Okay.  Because we're making a recording of this,

5    they do a digital recording instead of having a

6    stenographer, so do your best to speak up and I guess she

7    was able to hear you fine there, so we'll be good.

8            The first thing I want to you about is you have

9    the right to have this proceeding take place today before

10   what is called an Article III judge.  There are two kinds of

11   judges that work in this building.  There are district

12   judges and those are judges that are appointed for a life

13   term, so the President appoints a District Judge and the

14   Senate confirms him or her and then that person serves a

15   life tenure and it is important in the Constitution, it is

16   talked about in Article III of the Constitution that a

17   criminal defendant has a right to appear before a judge that

18   is appointed for a life term and they say that's for reasons

19   so that, you know, you can appear before a judge who is not

20   subjected to any kind of political pressures or the need to

21   get reappointed or anything like that.

22           So, you do have an absolute right to appear before

23   an Article III judge or a District Judge as opposed to me.

24   What I am is called a United States Magistrate Judge.  I am

25   appointed for eight years at a time.  I'm not appointed by

1    the president, though, I'm appointed by other judges, so

2    they get together and they appoint me, and every eight years

3    I have to get reappointed, so the District Judges are better

4    looking and maybe a little bit smarter, but I can do a lot

5    of the stuff that the district judges can do, but before I

6    do that, the parties have to consent.

7           So, for us to proceed today before me as opposed

8    to Judge Carr, I have to get your consent, and so I'm going

9    to ask you some questions on the record to make sure you

10   understand the difference between what I am and a District

11   Judge, and that you're, you know, okay with proceeding today

12   before me as opposed to a District Judge.

13          So, first of all, let me ask you, do you

14   understand, sir, that you have a right to have these

15   proceedings conducted before a United States District Judge,

16   that is, a judicial officer who is appointed for a life

17   term, pursuant to Article III of the U.S. Constitution.  Do

18   you understand that?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Do you understand that I am not a

21   District Judge but I am a United States Magistrate Judge,

22   that is, a judge who is appointed for an eight-year term,

23   subject to reappointment every eight years?  Do you

24   understand that?

25          THE DEFENDANT:   Yes, sir.

1          THE COURT:  Have you discussed with Mr. Gerken my

2    conducting these proceedings and have you concluded it is in

3    your best interests to proceed before me here today even

4    though I am not a United States District Judge?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  As you know, this case is assigned to

7    Senior District Judge James G. Carr.  Are you voluntarily

8    and knowingly giving up your right to plead before Judge

9    Carr or another Article III judge and are you voluntarily

10   consenting to appearing before me for those proceedings

11   today?

12         THE DEFENDANT:  Yes.

13         THE COURT:  I've been provided with a written

14   waiver which I believe you and Mr. Gerken and Mr. Moroney

15   signed before we got started today.

16         Mr. Calhoun, is this your signature on the consent

17   form?

18         THE DEFENDANT:  Yes, sir, it is.

19         THE COURT:  Did you understand this form when you

20   signed it?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Did anyone make any threats or

23   promises to cause you to appear before me today?

24         THE DEFENDANT:  No.

25         THE COURT:  Okay.  Well, based upon your answers

1   to my questions and my review of the consent form, I will

2   find that you have knowingly and voluntarily consented to

3   appearing before me today for this proceeding and I will

4   cause your written consent to be filed of record in the

5   case.

6           Mr. Calhoun, in a moment you are going to be

7   placed under oath because for -- it is one thing when

8   lawyers talk in court, but for an individual to speak in

9   court, for it to be evidence, it needs to be under oath, so

10  we're going to place you under oath so that as you're giving

11  answers to questions, they will be sworn testimony.

12          A couple things about that.  First of all, I'll

13  remind you again, you always have the right to stop and

14  speak with Mr. Gerken at any point in time and you can do

15  that off the record.  You don't have to do that out loud in

16  front of all of us.  You can take as much time as you need

17  along the way to stop and confer with Mr. Gerken.  Do you

18  understand that?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Okay.  The next thing I'm going to

21  tell you is I'll remind you that once you are placed under

22  oath you can be subjected to penalties and prosecution for

23  perjury if you make a misstatement once you are under oath,

24  so you need to tell the truth once you are placed under

25  oath.  Do you understand that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And finally, I need to caution you or

3    at least remind you that part of pleading guilty in a case

4    like this is going to involve you waiving your right under

5    the Fifth Amendment to not testify against yourself.

6          We all have a right, you might have heard somebody

7    say it even in common speaking, "I'm going to take the Fifth

8    on that"; we all have a right to not be dragged into court

9    and be made to answer a question which is in a sense

10   testifying against ourselves.

11         As part of pleading guilty, at some point I'm

12   going to ask you "Did you do that," and, you know, when I do

13   that and when you answer, you are going to be waiving your

14   right under the Fifth Amendment to not testify against

15   yourself.  Do you understand that?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Okay.  I'm going to operate under the

18   procedure, because I'm -- it seems like you have been able

19   to understand everything we've talked about so far, right?

20         THE DEFENDANT:  So far, yes.

21         THE COURT:  Okay.  If that is ever not the case,

22   just let Mr. Gerken know, let me know, but, you know, based

23   on the fact that you appear to be keeping up with me and

24   understanding everything I'm not going to, you know, always

25   go back and say "Do you understand everything we've done so

1    far"; just, we'll have the deal that if you don't understand

2    something, I want you to stop, stop me, and I'll go back

3    over anything we need to go back over.  Okay?

4                THE DEFENDANT:  Yes, sir.

5                THE COURT:  All right.  Thank you.

6                Would you please place Mr. Calhoun under oath?

7                (Defendant sworn.)

8                THE COURT:  Mr. Calhoun, do you understand you

9    are now under oath and subject to the penalties of perjury,

10   correct?

11               THE DEFENDANT:  Yes.

12               THE COURT:  Could you please state your full name

13   for the record?

14               THE DEFENDANT:  Roy Calhoun.

15               THE COURT:  And have you ever had any other names?

16               THE DEFENDANT:  Nicknames.  That's about it.

17               THE COURT:  Okay.  Not --

18               THE DEFENDANT:  No other names.

19               THE COURT:  No other names?  All right.  How old

20   are you, sir?

21               THE DEFENDANT:  28.

22               THE COURT:  And how far did you go in school?

23               THE DEFENDANT:  The last grade I completed was the

24   eighth grade.

25               THE COURT:  Are you able to read and write

1    English?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Okay.  And what town do you live in?

4              THE DEFENDANT:  In Toledo, Ohio.

5              THE COURT:  Are you married?

6              THE DEFENDANT:  No, sir.

7              THE COURT:  Do you have any dependent children?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  How many?

10             THE DEFENDANT:  One.

11             THE COURT:  I'm sorry?

12             THE DEFENDANT:  I have three children, but one

13   depends on me.

14             THE COURT:  Okay.  How old are they?

15             THE DEFENDANT:  Two years old, ten years old, and

16   eight years old.

17             THE COURT:  All right.  What kind of work have you

18   done in the past few years?

19             THE DEFENDANT:  I have worked at Walgreen's

20   distribution center and many warehouses.

21             THE COURT:  How is your physical health?

22             THE DEFENDANT:  Pretty good.

23             THE COURT:  All right.  Sir, are you under the

24   influence of any drugs, alcohol, or medication today that

25   would in any way impair or affect your ability to understand

1     what is going on here?

2                THE DEFENDANT:  No, sir.

3                THE COURT:  Have you taken any drugs, alcohol, or

4     medication in the last few days?

5                THE DEFENDANT:  No, sir.

6                THE COURT:  Is your mind clear?

7                THE DEFENDANT:  Yes, sir.

8                THE COURT:  Do you know why you are here?

9                THE DEFENDANT:  Yes, sir.

10               THE COURT:  Do you understand you have been

11    charged in, in an indictment, in a superseding indictment,

12    and we're here for a plea hearing today?  Do you understand

13    all that?

14               THE DEFENDANT:  Yes, sir.

15               THE COURT:  Have you ever been under the care of a

16    doctor or a counselor or any kind of mental health

17    professional for any mental illness?

18               THE DEFENDANT:  Yes, sir.

19               THE COURT:  How long ago was that?

20               THE DEFENDANT:  Like maybe a month before I was

21    arrested, so maybe in October of 2010.

22               THE COURT:  Okay.  Is whatever was wrong then

23    resolved as you sit here today?

24               THE DEFENDANT:  No.  I just have mixed anxiety and

25    adjustment disorder.

1          THE COURT:  Okay.  Do you take any medicine for

2     that?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  Okay.  Do you believe that is in any

5     way affecting your ability to be able to participate in this

6     proceeding today?

7          THE DEFENDANT:  Not as -- no, sir.

8          THE COURT:  Because part of the drill we have to

9     go through here is I have to make sure that, you know, there

10    is not something that is affecting you.

11         Have you met with a counselor at any point since

12    then or do you believe that you have it under control and

13    you are dealing with it?

14         THE DEFENDANT:  I talked to a mental health

15    counselor, but that's -- that's just about it.  Not really.

16         THE COURT:  Okay.  I'm just going to ask you, as

17    you sit here today, is your head on straight?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Okay.  Mr. Gerken, have you had any

20    difficulty communicating with Mr. Calhoun?

21         MR. GERKIN:  I have not, Your Honor.

22         THE COURT:  Have you discussed the case with him?

23         MR. GERKIN:  I have.

24         THE COURT:  Do you believe he understands the

25    nature and purpose of this hearing today?

1          MR. GERKIN:  I do.

2          THE COURT:  Do you either you or Mr. Moroney have

3     any doubt as to his competence here today?

4          MR. GERKIN:  I don't have any.  I can't speak for

5     Mr. Moroney.

6          THE COURT:  Well, I'll ask him next.

7          MR. MORONEY:  I have no doubt as to competency,

8     Your Honor.

9          THE COURT:  Okay.  Well, based upon my

10    observations of Mr. Calhoun's affect and demeanor, as well

11    as his responses to my questions, which have been entirely

12    appropriate, notwithstanding the fact that he may have

13    experienced some, some mental health issues in the past, I

14    do find in conjunction with the opinions of counsel there,

15    the Court finds that Mr. Calhoun is competent to participate

16    in this hearing today.

17         Mr. Calhoun, have you had enough time and

18    opportunity to speak with your lawyer, Mr. Gerken, about

19    this matter?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Have you told him everything you know

22    about the case?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Are you satisfied with the advice,

25    competence, and efforts of your lawyer in this case?

1          THE DEFENDANT:  Yes.  Yes, sir.

2          THE COURT:  Have you discussed all the possible

3     legal defenses to the charges against you?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  I'll ask you one more time, are you

6     satisfied with the legal assistance which has been provided

7     here?

8          THE DEFENDANT:  (Pause.) Honestly, I'm not for

9     sure what all the legal -- so I really don't know if it's a

10    good thing or not, so I don't -- I honestly wouldn't know.

11          Like me, to me, it seems like he does a pretty

12    good job, but I really wouldn't know, because I don't know

13    the law that well and I don't know if I'm really being

14    defended -- I don't know.

15          THE COURT:  Well, part of this process is you

16    have the right to have the assistance of counsel, and that

17    means the assistance of competent counsel, so I'm asking

18    you, as you sit here today, do you have any reason to

19    believe that you have not been provided with competent

20    counsel to assist you with this matter?

21          THE DEFENDANT:  I don't have any reason to believe

22    that.

23          THE COURT:  Okay.  Mr. Gerken, have you had enough

24    time and opportunity to prepare your client at each stage of

25    this proceeding?

1          MR. GERKIN:  Yes, Your Honor.

2          THE COURT:    Thank you.

3          MR. GERKIN:  If I could just -- while we are

4    putting this on the record, then, I know this was a concern

5    for Roy, there was a period of time that he was up at Milan

6    and he was not available to me a couple of times when we

7    tried to see each other.  Since that time, he has been

8    brought back to Lucas County and we've met on a regular

9    basis, and I believe that we've discussed all the issues

10   that he had and I think we've had sufficient time to do

11   that, but I know that was a concern he had.

12         THE DEFENDANT:   And did I have a concern also, I

13   mean, I'm aware of the fact that I was -- that they got me

14   with obstruction of justice, but I have never really got the

15   whole chance to look at my -- I guess my motion to discovery

16   was counsel only, I was never able to look at it and like

17   really go over it for hours and like see exactly what was

18   going on, I was only able to look at it for like maybe a few

19   minutes at a time.  I don't know if that's --

20         MR. GERKIN:  That's right.  The issue there is

21   that in light of these documents that were provided, they

22   were not allowed to be left at the jail because of the

23   issues of the safety of the people involved and the reports

24   about them.  It's been the practice of this court and myself

25   to go over those documents in the jail with my client and

1       then take the documents with me because I'm not allowed to

2       leave them there.  Is that what you're talking about?

3                   THE DEFENDANT:  Yes, for the motions.  It's like

4       -- you get what I mean, though?  It's only like --

5                   MR. GERKIN:  Right.

6                   THE DEFENDANT:  It's nothing against you, but it's

7       only so much I can do in so little time.

8                   THE COURT:   All right.  Well, have you had enough

9       time to prepare, Mr. Calhoun?  Are you satisfied with what

10      you are doing here today?  Because if you're not, I can't

11      let you do it.

12                  THE DEFENDANT:  I mean, don't get me wrong, Your

13      Honor.  I mean, the way -- the way things has been brought

14      to me is no matter if I'm guilty or not guilty, I'm found

15      guilty, and I have to agree with something if I want to get

16      out, the less amount of time.  It might sound crazy, but

17      sometimes you -- I don't know.  I don't know, Your Honor.  I

18      don't know.

19                  THE COURT:   Okay. I understand that, you know,

20      ideally you might have liked to have had copies of the

21      documents to pour over for hours on end, but I'm asking you,

22      have you had enough time to prepare to be where you are

23      right here today, and if not, I can't really go ahead with

24      this.

25                  Do you want to confer with Mr. Gerken for a

1     minute?

2               THE DEFENDANT:   Please.

3               THE COURT:   Okay.

4               (Attorney/client conference.)

5               THE DEFENDANT:  Yes, sir.  I'm prepared.

6               THE COURT:   Okay.  The record should reflect that

7     we just paused for five minutes or so to allow Mr. Calhoun

8     to confer with his counsel, and he has indicated that, in

9     response to my last question, he is in fact prepared to

10    proceed today.

11              I'm sure you have gone through your Constitutional

12    rights with Mr. Gerken and I'm sure you understand those,

13    but I'm going to go through just a few of them on the record

14    just so that I'm satisfied that you understand those.

15              Under the Constitution of the United States you

16    have a right to a trial either to the Court, which would

17    mean to a judge, or to a jury, and at a trial, you would

18    have a right to confront and cross-examine any witnesses

19    that the Government might bring in to testify against you.

20              You would also have a process for obtaining your

21    own witnesses, meaning if you wanted a particular individual

22    to appear and testify on your behalf, you could use the

23    power of the Court to issue a subpoena to that witness,

24    causing him to be here to testify on your behalf.  Do you

25    understand all that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  At the trial, the Government would be

3   required to prove your guilt beyond a reasonable doubt.  Do

4   you understand that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And at that trial, you could not be

7   compelled to testify against yourself.  Do you understand

8   that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Do you understand you have a right to

11   maintain your plea of not guilty?

12          THE DEFENDANT:  Yes, I --

13          THE COURT:  And do you understand you don't have

14   to plead guilty even if you are guilty?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you understand that if you maintain

17   your plea of not guilty, you will have the right to a speedy

18   trial, at which time you would have the right to be

19   represented by a lawyer, and if you could not afford to hire

20   your own lawyer, the Court would appoint one for you as we

21   have done here?  Do you understand all that?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  At the trial, you would be presumed

24   innocent.  You wouldn't have to prove anything.  The burden

25   of proof is on the Government in a criminal trial until the

1    very end, so it isn't like you have to come in and prove you

2    are innocent; the Government has to prove beyond a

3    reasonable doubt that you are guilty.

4              Do you understand that?

5              THE DEFENDANT:  Yes, sir, but as, as I was always

6    -- like from what I gather is even if I do decide to fight

7    in my trial, I'm trying to think of the word to use, pretty

8    much prosecutors like guide the testimony, so like, it's

9    been motions.  Parts of the motion of discovery I was

10   already seeing withdrew -- I have seen lies and things, but

11   from what I gather there, it doesn't matter.  That's the way

12   I take it, like I'm proving my innocence.  I have to prove

13   my innocence, not them prove my guilt.

14             THE COURT:  Well, that's decidedly not the case,

15   and I'll leave that to you to discuss with Mr. Gerken in

16   terms of how strong or how weak the Government's case might

17   be, but I assure you, you do not have to prove your

18   innocence.  When the trial starts, you are innocent, and it

19   is up to the Government -- and I'll talk about jurors in a

20   minute, but it is up to the Government to prove to those

21   jurors as to each and every count that you are guilty beyond

22   a reasonable doubt.

23             Do you understand that?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Okay.  If you had a trial, you could

1    not be forced to testify.  We already talked about that.

2    But you could testify if you wanted to.  If you chose to

3    testify, you could testify, but you don't have to.  If you

4    chose not to testify, nobody could comment about that to the

5    jury and suggest that you are guilty or make any suggestion

6    at all based on the fact that you didn't testify.

7             Do you understand that?

8             THE DEFENDANT:  Yes, sir.

9             THE COURT:  If the case went to trial and it was

10   before a jury, what we do is we would bring a large number

11   of prospective jurors here to the courthouse, and they would

12   come from all over this division of the district, so that is

13   roughly the northwest corner of the state is where the

14   jurors would come from.

15            We would have a process called voir dire, where

16   the jury, the prospective jurors would be questioned by the

17   Court and by counsel for both sides, and jurors who had a

18   particular bias or prejudice or for any reason couldn't be a

19   fair and impartial juror, those jurors would be excluded for

20   what is called cause, and that happened either, you know,

21   Mr. Gerken would make a motion in consultation with you or

22   Mr. Moroney, or the Court might make its own motion that a

23   particular juror not serve on this case if for one reason or

24   another that juror could not be fair and follow the law.

25            There would be another set of jurors, each side

1     would probably get three, but you would each have a certain

2     number of jurors that you could excuse and you would not

3     have to give any reason at all.  Those are called peremptory

4     challenges, and each side would have the same number of

5     those that they could exercise.  Do you understand all that?

6               THE DEFENDANT:  Yes, sir.

7               THE COURT:  If we had a jury it would be comprised

8     of twelve individuals and they would have to deliberate and

9     reach a unanimous verdict and they would have to consider

10    each count in the two indictments separately, so they would

11    have to agree unanimously on each count, considering each

12    count individually.  Do you understand that?

13              THE DEFENDANT:  Yes.

14              THE COURT:  Meaning that they would look at, for

15    example, Count 1 in one indictment, and they would have to

16    reach a unanimous agreement on that before they could

17    convict or acquit you on that charge.  Do you understand

18    that?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Okay.  And they would do that for each

21    count that is pending against you, so they would go through

22    them one at a time and they would have to reach a unanimous

23    agreement, all twelve of them.  Okay?

24              THE DEFENDANT:  Yes.

25              THE COURT:  If at a trial you were found guilty,

1       you would have a right to appeal your conviction.  Do you

2       understand that?

3               THE DEFENDANT:  Yes, sir.

4               THE COURT:  And you would also under certain

5       circumstances have the right to appeal your sentence, and

6       the reason I point that out to you is the plea agreement

7       here has a provision which generally waives your right to

8       appeal, including an appeal of your sentence with certain

9       circumstances, and you can see what -- certain exceptions,

10      and you can see what those are in the plea agreement.

11              I bring that out because our Court of Appeals,

12      which is the Sixth Circuit, which sits down in Cincinnati,

13      it generally enforces a waiver like that, so if you agree in

14      a plea agreement to give up your right to appeal, the Court

15      of Appeals is more likely than not going to enforce that

16      waiver of your right to appeal.  Do you understand that?

17              THE DEFENDANT:  Yes, sir.

18              THE COURT:  Okay.  Do you understand that if you

19      plead guilty you are waiving all these rights and if your

20      plea is accepted there will be no trial, but what will

21      happen is I will enter a recommendation on the record saying

22      that I, I find that the plea of guilty should be accepted.

23              Judge Carr will review the transcript of this

24      hearing.  If he concurs with my recommendation, he will

25      enter a judgment of guilty based upon our findings here

1    today and then ultimately he will sentence you on the basis

2    of that guilty judgment and a pre-sentence investigative

3    report which will be prepared.  Do you understand all that?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Do you also understand that by

6    pleading guilty, you will be deprived of valuable civil

7    rights, such as the potential of the right to vote, the

8    right to hold public office, the right to serve on a jury,

9    and the right to possess any kind of firearm?  Are you

10   willing to give up all those rights?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Mr. Calhoun, have you gone through the

13   plea agreement very carefully with Mr. Gerken?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you understand the plea agreement?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  And by "understand" I mean every word

18   on every page.  Would that be a fair assumption by me, that

19   you understand every word on every page of this agreement?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  And when I see your initials at these

22   bottom corners of the pages, that means you understood

23   everything on that page, correct?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Okay.  What I'm going to do now is I'm

1   going to have Mr. Moroney go through and summarize some of

2   the important aspects of this plea agreement for the record,

3   and most notably he is going to go through what all of the

4   different charges are that are pending against you that you

5   are pleading to and what the potential penalties are for

6   those charges and if there is a mandatory minimum, but also

7   what the potential penalties are.  He will go through all of

8   that one by one as we go through there, along with some of

9   the other important parts of the plea agreement, but I want

10  you to understand that the written words here on the page

11  are what controls, and Mr. Moroney's summary right now is

12  just to make a record of what is going on and it is to make

13  sure that you don't hear anything come out of his mouth that

14  is not consistent with your understanding of what these

15  written words -- so it is belt and suspenders at this point,

16  but what is contained on this written document is what

17  controls.

18          Mr. Moroney is going to summarize a fair amount of

19  it right now.  What you need to be listening for is anything

20  that comes out of his mouth that is not 100 percent

21  consistent with what you understand the written agreement to

22  be, because if there is anything that is different, we need

23  to figure out if either you're wrong or he is wrong and get

24  to the bottom of that, okay?   So listen real carefully,

25  follow along, and I'll ask Mr. Moroney to now go through

1    that.

2              MR. MORONEY:   Thank you, Your Honor.

3              Your Honor, I think most importantly, at the

4    outset, it should be noted that this agreement is entered

5    pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B)

6    and (C), upper case B and upper case C, and that is upper

7    case B because there are charges to be dismissed at the time

8    of sentencing, but upper case C because this presents a

9    binding recommendation to the Court as to a specific

10   sentence.

11             THE COURT:   Okay.

12             MR. MORONEY:   And I just wanted to note that at

13   the outset.

14             Paragraph 1 contains the waiver of Constitutional

15   rights which the Court has already gone over.

16             Paragraph 2 sets forth the maximum statutory

17   penalties for the counts to which the defendant would plead

18   guilty.  For Count 1, in the 464 case, the trafficking case,

19   that is a general conspiracy violation, maximum term is five

20   years imprisonment, a statutory fine of $250,000, maximum

21   period of supervised release three years, with a $100

22   special assessment.

23             For Count 2 in the 464 case, that is a violation

24   of 1591(a)(1) and (b)(2).  The maximum penalty for that is

25   life.  There is a mandatory minimum of ten years, a

1    statutory fine of $250,000, maximum period of supervised

2    release of five years, and again, a special assessment of

3    $100.

4          And then finally, Count 1 of the 188 case,

5    violation of Title 21, Section 1841(a)(1) and 846,

6    conspiracy to possess with intent to distribute oxycodone,

7    OxyContin and Percocet, maximum term there is 20 years, a

8    statutory fine of $1,000,000, maximum period of supervised

9    release is life, minimum period of supervised release is

10   three years, and a special assessment of $100.

11         Paragraph 4 of the agreement, the minimum sentence

12   must include imprisonment, reflects the fact that there is a

13   mandatory minimum of ten years on Count 2 to which the

14   defendant will enter a plea.

15         The special assessments total $300 and those are

16   due immediately at sentencing.

17         In Paragraph 8, Your Honor, it provides that the

18   defendant will enter pleas of guilty to Counts 1 and 2 of

19   the superseding indictment in the 464 case and to Count 1 in

20   the 188 case.  In turn, the United States agrees to move to

21   dismiss charges against the defendant in Counts 3 through 10

22   of the superseding indictment in 464 and in Count 2 of the

23   indictment in Case 188.

24         There is an agreement not to bring certain other

25   charges, which is set forth in Paragraph 10 of the

1    agreement.  The referendum sets forth the elements of the

2    three offenses to which the defendant will plead.  Your

3    Honor, do you want me to read those elements or --

4              THE COURT:   Yes, that would probably be fine.

5    You don't need to do the factual basis right now.  We'll

6    come back to that.  Even when we go through the plea

7    agreement, you don't have to do the factual basis now but it

8    is probably good to go ahead and make a record of what the

9    elements of the offenses are.

10              MR. MORONEY:  Fine, Judge.  For Count 1 on the 464

11    case, which is a general conspiracy, Section 371 violation,

12    the elements are that the defendant conspired or agreed with

13    at least one other person to commit the crimes alleged in

14    the indictment, the defendant knowingly and voluntarily

15    joined the conspiracy, and a member of the conspiracy did

16    one of the overt acts described in the indictment for the

17    purpose of advancing or helping the conspiracy.

18              For Count 2, labeled juvenile sex trafficking,

19    Title 18, 1591(a)(1) and (b)(2), again, the defendant

20    knowingly, and then any one of the following, recruited,

21    enticed, harbored, transported, provided or obtained by any

22    means a minor under the age of 18 years to engage in a

23    commercial sex act, and the conduct was in or affected

24    interstate commerce.

25              Finally, Count 1 of the 188 case, the drug

1      conspiracy, the elements include that the conspiracy alleged

2      in Count 1 existed, the defendant knew of that conspiracy,

3      the defendant knowingly and voluntarily joined the

4      conspiracy, and the defendant knowingly conspired to possess

5      with intent to distribute oxycodone, OxyContin and Percocet.

6              Paragraph 12 of the agreement sets forth the

7      binding recommendation to the Court.  In accord with

8      Criminal Rule 11(c)(1)(C), the parties agree that a sentence

9      of 15 years imprisonment is the appropriate disposition of

10     the case and that the Court may accept the agreement, reject

11     it, or defer a decision until the Court has reviewed the

12     pre-sentence report.

13             If the Court accepts the plea agreement, the

14     defendant understands that the Court must inform the

15     defendant that the agreed disposition, a sentence of 15

16     years imprisonment will be included in the judgment.

17             Paragraph 14 provides both parties are free to

18     allocute or speak at defendant's sentencing.  Paragraph 15

19     provides that because this is a binding recommendation,

20     there are no Sentencing Guideline stipulations.  Similarly,

21     Paragraph 16 provides that there is no provision for

22     acceptance of responsibility since there is an agreement to

23     a specified sentence of 15 years, and there is no agreement

24     about criminal history.

25             Paragraph 18 relative to cooperation, there is no

1    agreement to provide cooperation.  This is just standard

2    language which provides that if information is provided by

3    the defendant, that that may be taken into account under

4    Rule 35 within a specified period after sentencing.

5              Paragraph 19 contains the standard waiver of

6    appeal and post-conviction attack.  The defendant waives his

7    ability to challenge the conviction or sentence directly or

8    through a post-conviction proceeding, including under a 28

9    U.S.C. 2255 proceeding.  Nothing in the paragraph shall act

10   as a bar to defendant perfecting any remedies he may

11   otherwise have on appeal or collateral attack with respect

12   to claims of ineffective assistance of counsel or

13   prosecutorial misconduct.

14             Paragraph 20 contains a lengthy statement of

15   facts, which I won't summarize at this point.

16             THE COURT:  We'll come back to that.  Yes,

17   please.

18             MR. MORONEY:  The rest of them are fairly general

19   representations in the agreement.  He agrees to make

20   restitution if any is ordered by the Court, to provide a

21   financial statement if requested by the United States

22   Attorney's Office.  Once entered, the guilty plea cannot be

23   withdrawn.  The defendant understands that if he breaches

24   any promise in the agreement or if the guilty plea is

25   rejected by the Court, or is vacated or set aside, the U.S.

1    Attorney's Office will be released from all its obligations

2    under the agreement.  This agreement is only binding on the

3    U.S. Attorney's Office for the Northern District of Ohio,

4    and it binds no other U.S. Attorney or any other Federal

5    agency or state or local Government.

6              Paragraph 29 provides that the defendant is

7    satisfied with the assistance of counsel, George D. Gerken,

8    Esquire, and finally, it provides in Paragraph 30 that this

9    is the entire agreement between the defendant and U.S.

10   Attorney's Office and that no other promises or inducements

11   have been made, directly or indirectly.

12             THE COURT:   Thank you, Mr. Moroney.

13             Mr. Calhoun, were you able to follow along as he

14   did that summary?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Is there any part of that that is not

17   consistent with your understanding of what is contained in

18   that document?

19             THE DEFENDANT:   No.

20             THE COURT:   Okay.  You have heard what the

21   possible, you know, maximum penalties are --

22             MR. GERKIN:  May I have a moment, please?

23             THE COURT:   I'm sorry, yes.

24             MR. GERKIN:  One second, please?

25             THE COURT:   Sure.

1          (Attorney/client conference.)

2          MR. GERKIN:  Thank you, Your Honor, we're ready.

3          THE COURT:  Okay.  You heard what the maximum

4     possible penalties are, Mr. Calhoun.  I have to talk to you

5     about a couple of those things.

6          First of all, do you understand that following any

7     prison term you will likely be subjected to a term of what's

8     called supervised release?  We need to advise you that a

9     violation of the terms and conditions of supervised release

10    can result in additional jail time without any credit for

11    supervised release time already served prior to the

12    violation.  Do you understand that.

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Do you also understand that

15    restitution could be ordered as a condition of your sentence

16    in this case?  Depending on your financial status, the Court

17    could order you to pay some or all of the costs of your

18    confinement or your supervised release.  Do you understand

19    that?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  And as a result of your guilty plea,

22    an assessment of $100 per count must be imposed by the

23    Court.  Do you understand that?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  It is my understanding that since

1   this is a Rule 11(c) plea agreement that in the event, and

2   you can correct me if I'm wrong, Mr. Moroney, but in the

3   event Judge Carr does not agree to the sentencing

4   recommendation, Mr. Calhoun would then have an opportunity

5   to withdraw this plea.  Is that correct?

6              MR. MORONEY:  That's correct, Judge.

7              THE COURT:  Okay.  If you don't -- if for one

8   reason or another Judge Carr were to not accept the plea

9   agreement, Mr. Calhoun, and you were to not move to withdraw

10  your guilty plea, you need to understand that you could be

11  sentenced to anything up to the maximum penalties set forth

12  in the plea agreement here in the first paragraph where it

13  talks about the maximum penalties.  Do you understand all

14  that?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Okay.  The Court will, will

17  ultimately, I'm sure, not be in a position to determine

18  whether he is going to accept that binding recommendation or

19  not until such time as what is called a pre-sentence

20  investigation has been prepared.  That pre-sentence

21  investigation will -- it takes some time once the guilty

22  plea is entered, but I will refer the matter before that.  I

23  will refer the matter today to the probation department for

24  preparation of that, but once that is prepared then you and

25  Mr. Gerken will have an opportunity to review it and comment

1     about it, first of all to the probation officer, and then to

2     Judge Carr, and Mr. Moroney will have the same opportunity.

3              If Judge Carr were to not accept your, the binding

4     recommendation in the plea agreement and you were to not

5     move to withdraw the guilty plea but you were to go ahead

6     with sentencing, I'm going to go ahead and tell you that

7     there is something called the Sentencing Guidelines, which I

8     suppose you have spoken about at some length with

9     Mr. Gerken.  Those guidelines are advisory, they are not

10    binding on the Court, but they are one factor that the Court

11    would definitely consider in terms of imposing a sentence on

12    you.  Again, this is all talking about in the event that for

13    one reason or another Judge Carr were to not accept the plea

14    agreement and you were to not move to vacate your guilty

15    plea, so we're talking about something that is kind of twice

16    removed here, but I'm going to go ahead and cover it with

17    you just to make sure you understand it and that's that the

18    Sentencing Guidelines do come up with a range for, you know,

19    a particular offense based on the crime, and your criminal

20    history plays a big part in it, but they come up with a

21    range, but I just need to tell you that is one factor the

22    Court must consider but it is not binding on the Court.

23    There are other factors the Court has to consider that are

24    set forth in a statute called 3553(a) of Title 18.  That

25    lists things like the nature and circumstances of the crime

1    and the history and characteristics of you, the defendant;

2    the need for the sentence to reflect the seriousness of the

3    offense, to promote respect for the law, and to provide for

4    just punishment; to afford a deterrent to criminal conduct,

5    to protect the public from further crimes, and to provide

6    you with any needed educational or vocational training,

7    medical care, drug, or other correctional treatment.

8              Do you understand all that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Okay.  And again, that is only in the

11   event that Judge Carr were to not accept the binding

12   recommendation and you were to not move to vacate the plea.

13   Yes, Mr. Gerken?   Are you stretching?

14             MR. GERKIN:  I was scratching my arm.

15             THE COURT:   Okay.  Mr. Calhoun, I'll ask you one

16   more time, you read carefully this plea agreement before you

17   signed it?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  And this is your signature at the end

20   of the plea agreement?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  I think maybe you skipped Page 2 when

23   you were initialling.  I'm going to give it back to you and

24   have you guys take a look at Page 2.  Your initials are not

25   there.  That was just an oversight, Mr. Calhoun?   That was

1     just an oversight, that you had not signed on Page 2?

2                 THE DEFENDANT:  Yes, sir.

3                 THE COURT:  Okay.  Are you prepared to live by

4     this agreement?

5                 THE DEFENDANT:  Yes, sir.

6                 THE COURT:  By signing, you understand you will

7     have no trial of any kind, no right to appeal your

8     conviction, but presumably the Court will enter a judgment

9     of guilty based on your guilty plea; you understand all

10    that?

11                THE DEFENDANT:  Yes, sir.

12                THE COURT:  Have any threats or promises been made

13    to cause you to enter into this plea agreement?

14                THE DEFENDANT:  No, sir.

15                THE COURT:  Is your willingness to enter into this

16    plea agreement the result of talks that you have had with

17    Mr. Gerken?

18                THE DEFENDANT:  Yes, sir.

19                THE COURT:  Do you feel it is in your best

20    interests to enter into this plea agreement?

21                THE DEFENDANT:  Yes, sir.

22                THE COURT:  Upon your answers to my questions and

23    my review of the plea agreement, I will cause it to be filed

24    with the Clerk and made a part of the record in the case.

25                The next thing we have to talk about, Mr. Calhoun,

1   is I can't let you plead guilty to something unless I

2   believe there is what is called an adequate factual basis

3   for your plea, meaning I'm not going to let you plead guilty

4   unless I'm convinced that you did what they said, what they

5   say you did.

6           I could ask to you stand up and say, you know,

7   here is what I did, but what I choose to do is have

8   Mr. Moroney provide what the evidence would be, and he will

9   say here is what the Government would prove beyond a

10  reasonable doubt if this case went to trial, and it is all

11  set forth in the plea agreement and you can follow along as

12  he does this, and I would actually like you to do that.  It

13  is set forth in I think Paragraph 20 or 21 on Page -- looks

14  like Page 7, it starts on.  I'm going to ask Mr. Moroney to

15  tell me what the evidence would be if the case went to

16  trial.  When he gets done, I'm going to ask you if he is

17  right.  So, Mr. Moroney.

18          MR. MORONEY:  Thank you, Your Honor.  Defendant

19  agrees that the following summary fairly and accurately sets

20  forth the defendant --

21          (Discussion had off the record.)

22          THE COURT:  I'm sorry.

23          MR. MORONEY:  Is that better?

24          THE COURT:   It was actually distorting a little

25  bit.  I don't know.

1          MR. MORONEY:  It is showing green now?

2          THE CLERK:  Yes.

3          MR. MORONEY:  Testing.

4          THE CLERK:  Yes.  Thank you.

5          THE COURT:  If you say, "Can you hear me now,"

6     Verizon pays us 50 cents.

7          MR. MORONEY:  Can you hear me now?

8          THE COURT:  I can, yes. Mr. Moroney, we can hear

9     you now.  Please proceed.

10          MR. MORONEY:  The defendant agrees the following

11    summary fairly and accurately sets forth defendant's offense

12    conduct and a factual basis for the guilty plea.

13          Defendant further agrees that the facts set forth

14    in the summary are true and could be established beyond a

15    reasonable doubt if the case proceeded to trial.

16          Relative to Count 1 of the trafficking case, the

17    defendant from some time in 2007 and continuing through the

18    return of the initial indictment in this case on November 3,

19    2010, was actively involved in managing and directing the

20    prostitution of women.  Defendant recruited, induced and

21    enticed various women to prostitute for his benefit, posting

22    pictures and ads on Internet sites to arrange commercial sex

23    acts.  These acts took place at defendant's apartment, at

24    another apartment arranged by him, at local hotels, and at

25    hotels and apartments out-of-state.

1          Defendant received all or part of the proceeds

2    from these acts.  He used and provided cell phones to

3    facilitate the conduct and often provided transportation to

4    meetings with johns.

5          The defendant was assisted in his prostitution

6    enterprise by co-defendant Marissa Mayers, who functioned as

7    defendant's bottom, or most trusted prostitute.  At

8    defendant's direction and for his benefit, Mayers trained

9    and scheduled other prostitutes, including one or more

10   juveniles, arranged appointments with johns, collected

11   proceeds, and performed commercial sex acts herself.

12         In late 2007, Mayers and another prostitute

13   traveled to Detroit, Michigan, to engage in prostitution for

14   defendant's benefit.  On at least two occasions in May and

15   June, 2008, Mayers and several other prostitutes traveled

16   with defendant to Louisville, Kentucky, to engage in

17   prostitution for defendant's benefit.  In October, 2008,

18   Mayers and another prostitute traveled to Monroe, Michigan,

19   to engage in prostitution for the defendant.

20         During the period of the conspiracy, Mayers

21   traveled on at least seven occasions to New York to work as

22   an escort for a madam, and in each case provided the

23   proceeds of these acts to defendant.

24         In May, 2009, while defendant was in custody on

25   local charges, Mayers and another prosecute traveled to Fort

1    Wayne, Indiana, to engage in prostitution and raise money

2    for the defendant.

3         Relative to Count 2 of the trafficking charge, the

4    defendant in 2007 met a female identified in the superseding

5    indictment as KH.  KH was born on April 26, 1992 and thus

6    was 15 years old when she met defendant.  Defendant

7    introduced KH to Marissa Mayers, knowing that Marissa Mayers

8    would facilitate KH in engaging in prostitution.

9         In August, 2007, pictures of KH were taken on a

10   cell phone at defendant's residence.  The defendant was

11   present in a vehicle transporting KH to engage in sexual

12   relations with a male for money.

13        The defendant admits that his conduct involving

14   the use of cell phones, a vehicle for transportation, and a

15   place of public accommodation for prostitution was in and

16   affecting interstate commerce.

17        Relative to Count 1 of Case Number 188, since at

18   least as early as 2008, defendant knowingly and voluntarily

19   participated in a conspiracy to obtain and distribute

20   oxycodone and its derivatives, OxyContin and Percocet.  The

21   defendant obtained some of these drugs on a monthly basis

22   through prescriptions, but then illegally sold the drugs to

23   defendant's customers for a profit.

24        The defendant also induced other individuals,

25   including co-defendant Charles R. Travis, to obtain these

1    drugs and sell them to defendant, who would then resell the

2    drugs for a profit.  Defendant also had other family members

3    not charged in the indictment obtain oxycodone and then

4    provide the pills to defendant or deliver the pills to

5    specified buyers.

6            After his arrest on the initial indictment on

7    November 3, 2010, the defendant continued to direct the

8    charged conspiracy from jail.  Using the jail phone system,

9    he would contact co-defendants including Velda Travis,

10   Charles Travis, and Monica Velasquez and arrange for the

11   acquisition and sale of pills.  He provided customer names

12   and contact numbers, and also directed family members to

13   obtain prescriptions and provide the pills for sale to

14   customers.  The defendant had profits from the illegal sale

15   of these prescription pills posted and placed on his books

16   at the jail.

17           The defendant admits that during the course of the

18   conspiracy, he regularly distributed approximately 60 oxy

19   80s and perc 10s per month.  When he was arrested on

20   November 3, 2010, the defendant held on his person

21   approximately 50 oxy 30s which he intended to sell --

22           THE COURT:  It actually says 59, Mr. Moroney.

23           MR. MORONEY:  I'm sorry, 59.  Sorry.  The

24   defendant in December, 2010 arranged for co-defendants Velda

25   Travis and Monica Velasquez for the purchase of 100 perc 10s

1    from a family member in Pontiac, Michigan for resale to

2    defendant's customers.

3            On March 10, 2011, the defendant arranged the sale

4    of 120 perc 10s by co-defendant Charles Travis to the

5    co-defendant Justin Hill in a transaction facilitated by

6    Velda Travis.

7            The amount of drugs possessed and distributed by

8    defendant during the course of the conspiracy and/or

9    directly attributable to defendant's actions and reasonably

10   foreseeable within the conspiracy was at least 133.6 grams

11   of oxycodone and its derivatives, such as OxyContin and

12   Percocet, which is equivalent to approximately 894.9

13   kilograms of marijuana.

14           The defendant knew that the substances possessed

15   and distributed by the defendant were oxycodone and

16   derivatives thereof, and that these were controlled

17   substances.

18           THE COURT:  Thank you, Mr. Moroney.  Mr. Calhoun,

19   were you able to hear that recitation of what the evidence

20   would be if the case went to trial?

21           THE DEFENDANT:  Excuse me?

22           THE COURT:  Were you able to hear?   Is

23   Mr. Moroney correct?

24           MR. GERKIN:  Magistrate Judge, there are a couple

25   of corrections that Mr. Calhoun would like to make, none of

1    them substantive at this point.

2           The first one is that, on Page 10 in Paragraph 20,

3    the last paragraph, he would like to basically tell the

4    Court that Velda Travis was not involved in that

5    transaction, that that was simply Monica Velasquez that was

6    involved in that one.  He still admits his involvement in

7    it, but he would like to correct the statement to show that

8    in fact she was not involved in it.

9           Also, on Page 8 --

10          THE COURT:  Do we need to modify the plea

11   agreement?

12          MR. GERKIN:  Judge, he just wants to make the

13   statement to clarify to the Court.

14          THE COURT:  Okay.  But he has already signed --

15    he has already signed the agreement for this --

16          MR. GERKIN:  I understand.

17          THE COURT:  But go ahead, make the statement.

18          MR. GERKIN:  Thank you.  Also on Page 8, basically

19   the second full paragraph down, he denies that Marissa

20   Mayers was identified as his bottom and most trusted

21   prostitute, and then also in the last paragraph, that even

22   though Marissa Mayers traveled to other interstate

23   locations, that at the time that she traveled to Monroe,

24   Michigan, she was engaging in prostitution for herself and

25   not for the defendant.  We would like to make that

1    information available to the Court.  He did sign this.  He

2    understands that he lives by what is in there, but he felt

3    the necessity to put that on the record.  Is that right?

4            Everything else in here, I mean, you agree with

5    it?  Are you ready to go?

6            THE DEFENDANT:   Yes.

7            THE COURT:   So as it relates to your conduct, Mr.

8    Calhoun, do you agree that you did everything Mr. Moroney

9    says you did?

10            THE DEFENDANT:   Could I have a second?

11            THE COURT:   Sure.

12            (Attorney/client conference.)

13            MR. GERKIN:  Your Honor, we've had a discussion

14    and I have answered his questions and I will let him tell

15    you if he is willing to proceed.

16            THE DEFENDANT:   Yes, sir.

17            THE COURT:   Mr. Calhoun, did you do what

18    Mr. Moroney says you did?

19            THE DEFENDANT:   No, sir.  Honestly, I'm willing

20    to take this deal because if I go to trial, I'm scared of

21    the other time, but the things in here I am not guilty of,

22    and if I sit here and say I'm guilty of it I will be

23    perjuring myself, but I'm willing to take this deal.

24            THE COURT:   Could I have counsel approach for a

25    minute, please?

1              (Discussion off the record.)

2              THE COURT:   Mr. Calhoun, I understood through

3    Mr. Gerken a while ago that you had some, some things that

4    you didn't agree completely with in terms of the recitation

5    of facts.  I guess I'm going to ask you to turn to the page

6    in the plea agreement that sets forth the elements of the

7    different offenses, and that is like at Page 4.

8              Mr. Calhoun --

9              THE DEFENDANT:   Yes, sir?

10             THE COURT:   And we look at, for example, first of

11   all, Count 1 in the 464 case that says that you conspired,

12   agreed with at least one other person to commit the crimes

13   alleged in the indictment, that you knowingly and

14   voluntarily joined the conspiracy, and a member of the

15   conspiracy did one of the overt acts described in the

16   indictment for the purpose of advancing or helping the

17   conspiracy.

18             Did you do that?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:   Okay.  In the second, the next one

21   there, in the 464 case, Count 2, it says that you knowingly

22   -- and these are dysjunctive, so it could be any one of

23   these, recruited, enticed, harbored, transported, provided

24   or obtained by any means a minor under the age of 18 years

25   to engage in a commercial sex act and that the conduct was

1    in or affecting interstate commerce.  Did you do that?

2              THE DEFENDANT:   No, sir.

3              MR. GERKIN:  Could I talk to him one second on

4    that?

5              THE COURT:   Yes.

6              MR. GERKIN:  Because we seem to have an issue on

7    the definition.

8              THE COURT:   Okay.

9              (Attorney/client conference.)

10             THE COURT:   Did you do that, Mr. Calhoun?

11             THE DEFENDANT:   No, sir.

12             THE COURT:   Here is the problem we have.  As I

13   told you when we started off, I'm not going to let you plead

14   guilty if I'm not convinced that you did what they say you

15   did, and if you can't tell me that you did what they say you

16   did, I can't let you plead guilty.

17             So, I appreciate that you are telling me you

18   can't, you can't say that you did that, so on the virtue of

19   that I'm going to have to say that I'm not going to be able

20   to make a recommendation that your plea be accepted.

21             THE DEFENDANT:   I am guilty of the third one.

22             THE COURT:   But the problem here is the plea

23   agreement is that you are, that you are pleading guilty to,

24   you know, all three things there, and, you know, you and

25   Mr. Gerken acting on your behalf has entered into an

1    agreement with the Government through Mr. Moroney as to what

2    you are pleading guilty to.  I'm not free at this point to

3    allow you to pick and choose.  I don't believe, and, you

4    know, Mr. Moroney, I don't believe, is going to say okay,

5    you can plead guilty to, you know, the one count and the

6    other count but not the third count, because he is

7    dismissing a bunch of other, you know, counts in the

8    complaint, in the superseding indictment and in the other

9    indictment.  It is all part of the deal.

10          So, on the one hand I cannot let you plead guilty

11   if you didn't do it, but on the other hand, I cannot let you

12   pick and choose particular counts to plead guilty to and

13   then still hold the Government to the bargain of dismissing

14   all the other counts.  I mean, you could plead guilty to

15   everything else in the world, I suppose, but I don't think

16   you want to do that because you've reached a plea agreement

17   here with a binding, a binding recommendation to the Judge.

18          So, it is kind of all in or out here and if you're

19   -- if your honest answer is I can't say I did that, that's

20   fine, but I can't go ahead with a recommendation that your

21   plea be accepted under those terms because, you know, in

22   other circumstances there might be, you know, and in state

23   court they have something called an Alfred plea, where you

24   basically plead guilty, you say I didn't really do it but I

25   can't face the consequences of going to trial.

1          I'm not -- I'm not in a position to accept a plea

2     like that here.  The only way I can accept this plea is if

3     there is what is called an adequate factual basis for the

4     plea, meaning that I'm convinced you did what they say you

5     did.  If you can't tell me that, I can't accept the plea.

6          THE DEFENDANT:  I can't admit under oath that I

7     did that.

8          THE COURT:  Okay.  Mr. Moroney, I don't know what

9     we can do, other than not go forward at this point.  Are you

10    prepared to accept a plea to the other two counts and not

11    that one?  I mean, to me, it is sort of a material

12    departure from the plea agreement.

13         MR. MORONEY:  You characterized it correctly,

14    Judge.  It is a package agreement and that is what the deal

15    is.

16         THE COURT:  Okay.  Do you have any other

17    thoughts, Mr. Gerken?

18         MR. GERKIN:  No, Your Honor.  I said off the

19    record and I will maintain for the record now that once my

20    client says that he doesn't feel that he could plead to that

21    specific count after the discussions that we've had, after

22    his initial representations to me, if he has come to that

23    point knowing full well the implications, ramifications and

24    everything, I don't think at this point there is anything we

25    can do except to take it at face value and we will move on.

1    I think the only other alternative is then to seek trial,

2    unless the Government comes up with a different agreement

3    later, or I would at this point feel really uncomfortable

4    proceeding to trial with Mr. Calhoun.

5         As he already expressed, he didn't think he had

6    enough time to really look at all the discovery.  He has

7    made representations to me that he was willing to accept

8    this plea agreement.  When we went over it, he signed it,

9    and now I'm not exactly sure where he is.  He and I get

10   along fine.  It is not that.

11        THE COURT:   Okay.

12        MR. GERKIN:  It is just that I just don't feel

13   that he would really feel comfortable with me going forward

14   with a trial in this matter.  However, I'm going to then at

15   this point make a request to withdraw as counsel.

16   (Inaudible) assist him through this.

17        THE COURT:   Okay.  I want you to confer with

18   Mr. Calhoun, and if you stand by that, once you have

19   conferred with him you can file a motion to that effect.

20   I'm not going to rule upon an oral motion.  I want there to

21   be consultation with him and I want him to be in a position

22   where he concurs with that.

23        You probably would want to move that the plea

24   agreement be withdrawn at this point, because we've already

25   filed it.  Can we -- can we withdraw that at this point,

1    Mr. Moroney, and should we?

2              MR. MORONEY:  I would so move, Your Honor.  I

3    would not want copies --

4              THE COURT:   Yes.  I think we should --

5              MR. GERKIN:  And I would also concur.

6              THE COURT:   Okay.  So we'll -- we'll nunc pro

7    tunc not file the -- I just like saying that -- we'll not

8    file the plea agreement, and/or strike it to the extent it

9    has been filed with the Clerk.

10             Do you understand we can't go forward, Mr.

11   Calhoun?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:   Your eyes are wide open here, and

14   you, you understand what is going to happen, you know, the

15   case will go back and I know you have a trial date, but I

16   understand that, you know, you and Mr. Gerken have to talk

17   about whether he is going to continue representing you or if

18   you are going to file a motion to change counsel and/or if

19   you are going to file a motion for additional time.  That is

20   all frankly between you and Judge Carr, I believe, but I --

21   I just can't, I can't let you go ahead if you can't tell me

22   in good conscience that you did that --

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:   So I think we need to adjourn for

25   today.

1                MR. GERKIN:  May we approach?

2                THE COURT:  Yes.

3                (Discussion off the record.)

4                THE COURT:  All right.  I don't believe there is

5      anything else that I can do today.  I would encourage

6      counsel to do the best to communicate with Judge Carr and if

7      a motion needs to be filed, either in terms of Mr. Gerken's

8      continued representation or in terms of relief from the

9      presently-scheduled trial date, I would encourage them to do

10     that.

11               Mr. Calhoun, have you understood everything that

12     just happened here today?

13               THE DEFENDANT:  Yes, sir.

14               THE COURT:  Okay.  Any questions?

15               THE DEFENDANT:  No, sir.

16               THE COURT:  All right.  We'll be adjourned, thank

17     you.

18               (Proceedings adjourned at 3:52 p.m.)

19                    C E R T I F I C A T E

20          I, Judith A. Gage, Federal Official Court Reporter,
       certify that the foregoing is a correct transcript from the
21     record of proceedings in the above entitled matter

                                   Date:   February 2, 2012
25